UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMMY KINNER,

Plaintiff,

v. Case No. 3:24-cv-1131-JEP-SJH

LANCE MOORE, et al.,

Defendants.

---

# ORDER

This cause is before the Court on Defendants' Second Amended Motion to Dismiss[1] Plaintiff's Second Amended Complaint (Doc. 34) and Plaintiff's Response[2] (Doc. 36) thereto. For the following reasons, Defendants' Second Amended Motion to Dismiss will be granted to the extent that this case will be dismissed without prejudice.

## I. Plaintiff's Second Amended Complaint

Plaintiff is proceeding pro se and in forma pauperis on a Second Amended Complaint for Violation of Civil Rights ("**SAC**") against Lieutenant

---

[1] Defendants' previous Motion to Dismiss was denied without prejudice for failure to attach the correct declarations and supporting documents. (*See* Doc. 33).

[2] In light of Plaintiff's Response, the Court's Order to Show Cause (Doc. 35) is discharged. To the extent Plaintiff seeks affirmative relief in his Response, his request is denied. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *see also* M.D. Fla. R. 3.01.

Lance Moore ("**Moore**"), Sergeant Brian Peacock ("**Peacock**"), Correctional Officer Austin Bilodeau ("**Bilodeau**"), Correctional Officer Christopher Smith ("**Smith**"), and Lieutenant John Doe ("**Lt. Doe**"), in their individual capacities.[3] (Doc. 17). The remaining Defendants (Correctional Officer John Doe, Lieutenant FNU Cannon, Medical John Doe, and Michelle K. Brantley) were terminated when the Court dismissed without prejudice Claims 1–2 and 4–8 of the SAC for failure to state a claim. (Doc. 18). The only remaining claim in the SAC is Claim 3 against Moore, Peacock, Bilodeau, Smith, and Lt. Doe. (*Id.*).

In Claim 3, Plaintiff alleges that on or around July 10, 2024,[4] Moore, Peacock, Bilodeau, Smith, and Lt. Doe entered Plaintiff's cell and in "a concerted act" proceeded to "punch, stomp, [and] twist [Plaintiff's] body until [he] was bloody," and one of them stuck a finger in Plaintiff's rectum. (Doc. 17 at 6). Bilodeau "did most [of the] damage with his feet and hands," and "rubbed feces all over [Plaintiff's] face," mouth, eyes, and open wounds. (*Id.*). During the attack, Plaintiff kept his head down to protect his face, which was targeted the most. (*Id.*). At some point, Moore told Plaintiff that he had already advised

[3] Unless otherwise noted, all facts recited in this Order are taken from the operative SAC's allegations and are assumed true only for purposes of adjudicating the Second Amended Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] It appears this incident occurred at Suwannee Correctional Institution. (*See* Doc. 17 at 5–7, 9).

medical staff that Plaintiff had done this to himself by banging his head on the wall. (*Id.*). Plaintiff alleges he suffered physical and emotional pain; reinjury to his broken arm; a "busted . . . eye, head[,] face, mouth [and] lip"; and anal bleeding. (*Id.* at 7). As relief, he seeks actual and punitive damages and court costs. (*Id.*).

## II. Defendants' Second Amended Motion to Dismiss

Defendants[5] move to dismiss the SAC for Plaintiff's failure to properly exhaust his available administrative remedies and failure to disclose his litigation history. (*See* Doc. 34). Because the SAC will be dismissed on the exhaustion issue, the Court does not address any remaining arguments.[6]

### A. Standard

The Prison Litigation Reform Act ("**PLRA**") requires an inmate challenging the conditions of his confinement to first exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Higginbottom*

---

[5] The present Motion is filed by Moore, Peacock, Bilodeau, and Smith. To date, Lt. Doe has not been identified for service of process. (*See* Docs. 25, 29, 32).

[6] To the extent Defendants argue that the Court should dismiss Plaintiff's request for declaratory and injunctive relief (Doc. 34 at 11), it does not appear that Plaintiff seeks such relief in the SAC.

*v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he plain language of [42 U.S.C. § 1997e(a)] adequately puts prisoners on notice that they must exhaust their administrative remedies before pursuing prison-related civil actions in federal court."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the failure to exhaust "is an affirmative defense under the PLRA," *id.*, which is properly raised in a motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (stating the failure to exhaust is a matter "in abatement," is properly "raised in a motion to dismiss," and must "be treated as such if raised in a motion for summary judgment"). While "the PLRA exhaustion requirement is not jurisdictional," *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (unpublished but persuasive) (citing *Jones*, 549 U.S. at 211); *see also Bryant*, 530 F.3d at 1374 (stating that exhaustion is "a precondition to an adjudication on the merits"). Not only is there a mandatory exhaustion requirement, but the PLRA "requires proper exhaustion," which means that an inmate must fully and properly comply "with the system's critical procedural rules." *Woodford*, 548 U.S. at 93, 95.

The Eleventh Circuit has articulated a two-step process that district courts must employ when examining whether an inmate has exhausted his administrative remedies, explained as follows:

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d 1077, 1082 (11th Cir. 2008). First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations modified). At step two of the procedure established in *Turner*, the district court can consider facts outside the pleadings as long as the factual issues do not decide the merits of the case and the parties have had sufficient opportunity to develop the record.[7] *Bryant*, 530 F.3d at 1376.

---

[7] In an unpublished but persuasive decision, the Eleventh Circuit stated that the parties must receive notice of the opportunity to develop the record on exhaustion. *See Kinard v. Fla. Dep't of Corr.*, No. 24-10359, 2024 WL 4785003, at *6–7 (11th Cir. Nov. 14, 2024). Here, the Court notified Plaintiff that: (1) he had forty-five days to respond to any motion to dismiss; (2) on a motion to dismiss for failure to exhaust, "the Court may consider facts outside of the pleadings and may 'resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record'"; and (3) "[i]n responding to a motion to dismiss for failure to exhaust, Plaintiff may provide the Court with affidavits and/or other documents showing that he has, in fact, exhausted available administrative remedies or was prevented from doing so." (Doc. 3 at 3; Doc. 19 at 3–4 (citations omitted)). When Defendants filed three nearly identical Motions to Dismiss between

"Although federal law sets the exhaustion requirement, state law determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). To properly exhaust administrative remedies in Florida, an inmate generally must complete a three-step sequential grievance process by filing an informal grievance, a formal grievance, and then an administrative appeal as set forth in Chapter 33-103 of the Florida Administrative Code ("**F.A.C.**"). *See* Fla. Admin. Code rr. 33-103.001, 33-103.005, 33-103.006, 33-103.007. Informal grievances typically are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden, assistant warden, or deputy warden of the institution; and administrative appeals are handled by the Office of the Secretary of the Florida Department of Corrections ("**FDOC**"). *See* Fla. Admin. Code rr. 33-103.005(1)(b), 33-103.006(1)(a), 33-103.007(1), 33-103.015(3).

Except for specific, enumerated issues, an inmate generally must initiate the grievance process by filing an informal grievance within twenty days "of

---

January 20 and August 10, 2026, Plaintiff had ample opportunity to develop the record on exhaustion. (*See* Docs. 26, 28, 34). When Plaintiff responded to Defendants' present Motion, however, he did not address the exhaustion issue. (*See* Doc. 36). He also did not seek discovery on this issue. Under the circumstances, the Court finds that Plaintiff has received both a notice and an opportunity to develop the record.

when the incident or action being grieved occurred." Fla. Admin. Code r. 33-103.011(1)(a). The FDOC has fifteen days to respond to an informal grievance. Fla. Admin. Code rr. 33-103.005(4), 33-103.011(3)(a). If the informal grievance is denied, the second step of the grievance process requires an inmate to submit a formal grievance at the institutional level within fifteen days from "[t]he date on which the informal grievance was responded to" and attach the contested informal grievance and the response thereto. Fla. Admin. Code rr. 33-103.006(2)(g), 33-103.011(1)(b). The FDOC has twenty days to respond to a formal grievance. Fla. Admin. Code rr. 33-103.006(6), 33-103.011(3)(b). Third, if the formal grievance also is denied, the inmate must appeal to the Office of the Secretary of the FDOC within fifteen days "from the date the response to the formal grievance [was] returned to the inmate" and attach the contested formal grievance and the response thereto. Fla. Admin. Code rr. 33-103.007(4)(g), 33-103.011(1)(c). The FDOC has thirty calendar days to respond to a grievance appeal. Fla. Admin. Code r. 33-103.011(3)(c). An inmate may not proceed to a subsequent step in the grievance process before receiving a response to the grievance presently under review or, if no response is given, before "expiration of [the] time limit" for the respective prison official to respond. Fla. Admin. Code r. 33-103.011(4).

An inmate may bypass the first step and, in some instances, the second step, when complaining about specific enumerated issues. *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.006(3), 33-103.007(3). More specifically:

> Inmates may skip [the informal grievance] step and initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature, grievance of reprisal, grievance alleging violations of the Americans with Disabilities Act, medical grievance, grievance involving gain time governed by rule 33-601.101, F.A.C. Incentive Gain Time, grievance challenging placement in close management or subsequent reviews, grievances regarding the return of incoming mail governed by subsection 33-210.101(14), F.A.C., grievances regarding disciplinary action (does not include corrective consultations) . . . , and grievances regarding allegations of sexual abuse as defined in subsection 33-103.002(17), F.A.C. Inmates may proceed directly to the Office of the Secretary on the following issues . . . : grievance of emergency nature, grievance of reprisal, protective management, admissible reading material, sentence structure issues (release date calculations), and inmate banking issues. Grievances alleging a violation of the Health Insurance Portability and Accountability Act (HIPAA) must be filed directly with the Office of the Secretary . . . .

Fla. Admin. Code r. 33-103.005(1). When a prisoner files a "direct grievance" with the Secretary, he must do so within fifteen days "from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(1)(d).

A grievance filed at any step of the process "may be returned to the inmate without further processing" if: it is untimely; it "addresses more than one issue or complaint"; it is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; it is "not written legibly

and cannot be clearly understood"; it is a supplement to a previously-submitted grievance that has been accepted for review; it does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; it does not include the required attachments; it was not filed at the inmate's presently assigned location; it was written outside of the boundaries of the space provided on the form; or for any of the other enumerated reasons. Fla. Admin. Code r. 33-103.014(1). When a grievance is returned to an inmate without action, the response does not constitute one "on the merits." *See id.* If the inmate does not "refile [the grievance] utilizing the proper procedure or correct the stated deficiency," Fla. Admin. Code r. 33-103.014(2), he cannot be said to have exhausted his administrative remedies in "compliance with [the] agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90; *see also Pavao*, 679 F. App'x at 825 (reasoning that plaintiff's grievances, which were "returned" for non-compliance with agency rules, were not evidence of proper exhaustion, even though plaintiff "repeatedly presented the substance of his allegations to the prison," because the FDOC "never reached the merits of [the] complaints").

A court can excuse a failure to exhaust if it determines that a prison official improperly returned an inmate's grievance without action, because the "PLRA does not 'require[ ] an inmate to grieve a breakdown in the grievance process.'" *Dimanche*, 783 F.3d at 1214 (alteration in original) (concluding that

contrary to the FDOC Secretary's assessment, plaintiff's direct grievance to the Secretary, which was returned without action, met the requirements of a grievance of reprisal and was sufficient to satisfy the plaintiff's exhaustion obligations). However, when confronted with an exhaustion defense, district courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 632, 648 (2016). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.* Administrative remedies are "available" when they are "capable of use" or "accessible," regardless of whether they favorably resolve an inmate's complaint. *Id.* at 642–43. Administrative remedies are deemed "unavailable" only in three narrow circumstances: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the agency's rules are "so opaque" that reasonable inmates cannot navigate the process; or (3) when prison officials actively interfere with the grievance process through "machination, misrepresentation, or intimidation." *Id.* at 643–44.

**B. Defendants' Submissions**

In support of their exhaustion argument, Defendants submit: (1) the Declaration of Jeffrey McClellan, Assistant Warden of Programs; (2) the Declaration of Lawanda Sanders-Williams, Operation Analyst; (3) grievance

logs showing the informal grievances, formal grievances, and grievance appeals that Plaintiff filed between July 10, 2024 (the date of the incident) and October 31, 2024 (the filing date of the Complaint); and (4) copies of Plaintiff's pertinent grievances, appeals, and responses thereto. (Docs. 34-1, 34-2).

As stated in McClellan's Declaration, Plaintiff filed twenty-six informal and fifteen formal grievances during the relevant period, but "[n]one of the grievances filed reference Moore, Peacock, Billodeau or Smith, and none reference an alleged incident on July 10, 2024." (Doc. 34-1 at 1; *see also id.* at 4–67). McClellan also avers that: "After a review of the records available, it has been determined that there was no hindrance or impediment to [i]nmate Kinner's utilization of the grievance procedure at any level. All grievances were responded to and returned to him per Rule 33-103.001." (Doc. 34-1 at 2). In addition, as stated in Sanders-Williams's Declaration, Plaintiff filed three grievance appeals, but "[n]one of the three grievance appeals mention Moore, Peacock, Billodeau, or Smith, and none reference an alleged July 10, 2024 incident." (Doc. 34-2 at 1; *see also id.* at 4–17).

**C. Analysis**

Considering that Plaintiff presents no argument or evidence on the exhaustion issue, the Court finds that dismissal for lack of exhaustion is warranted at the first step of *Turner*. As stated earlier, at the first step of *Turner*, "district courts look to the factual allegations in the motion to dismiss

and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley*, 802 F.3d at 1209. Plaintiff does not address the exhaustion argument in his one-page Response.[8] (*See* Doc. 36). Therefore, considering the factual allegations in Defendants' Second Amended Motion to Dismiss, the Court finds that Plaintiff did not file any grievances or appeals during the relevant period pertaining to the July 10, 2024 incident. Because Plaintiff did not complete the grievance process before filing this action, the SAC is subject to dismissal for Plaintiff's failure to exhaust his administrative remedies.

To the extent Plaintiff alleges that his administrative remedies were unavailable because the FDOC "offers no adequate remedy" (Doc. 17 at 9), this vague and conclusory allegation is wholly insufficient to demonstrate that the administrative procedure "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643–44. Further, to the extent Plaintiff alleges that his administrative remedies were unavailable because of "ongoing retaliation" (Doc. 36), Plaintiff's unelaborated allegation is wholly insufficient to demonstrate that "the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th

---

[8] In the SAC, Plaintiff indicates he grieved his claims, though he is not sure where, and notes that the FDOC "offers no adequate remedy" anyway. (Doc. 17 at 9). These allegations, which are considered at the second step of *Turner*, are insufficient to show that the administrative remedies were unavailable to Plaintiff.

Cir. 2020) (quoting *Turner*, 541 F.3d at 1085). First, Plaintiff does not allege any specific instances or threats of retaliation. (*See* Doc. 36). In addition, Defendants' evidence shows that the grievance process was available to Plaintiff during the relevant timeframe. (*See* Doc. 34-1 at 2 ("After a review of the records available, it has been determined that there was no hindrance or impediment to [i]nmate Kinner's utilization of the grievance procedure at any level. All grievances were responded to and returned to him per Rule 33-103.001.")). Moreover, the record refutes any allegation that prison officials engaged in threatening or retaliatory behavior that deterred Plaintiff from filing or refiling any of his grievances or appeals. *See Turner*, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process).

The record shows that during the relevant, roughly three-month period from July 10 to October 31, 2024, Plaintiff filed twenty-six informal grievances, fifteen formal grievances, and three grievance appeals. (*See* Docs. 34-1, 34-2). Plaintiff's grievance-filing history demonstrates that he knew how to participate in the grievance process and that Defendants did not make that process unavailable to him. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th

Cir. 2018) (noting that the district court "appropriately considered [the prisoner's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances"); *Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, *9 (N.D. Fla. Feb. 17, 2016), *rep. & recommendation adopted*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) ("Plaintiff's consistent pattern of filing grievances demonstrates that he was not actually deterred from filing grievances."). Also, the fact that the FDOC referred the subject of at least one of Plaintiff's grievances to the Office of the Inspector General (*see* Doc. 34-1 at 9), further undermines any allegation that prison officials were somehow hindering Plaintiff's grievances. *See Fleming v. Espino*, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, *6 (M.D. Fla. 2021) (stating that the prison officials' reporting of the plaintiff's allegations to the Office of the Inspector General undermines the plaintiff's "claim that correctional officers were lying or otherwise attempting to prevent him from submitting grievances about the alleged assault or covering it up"). Thus, Plaintiff has not shown that the grievance process was unavailable to him. Because Plaintiff was not excused from the PLRA's exhaustion requirement, but failed to take the necessary steps to complete it,

the SAC will be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies.[9]

## III. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Second Amended Motion to Dismiss (Doc. 34) is **GRANTED** to the extent that Plaintiff's Second Amended Complaint is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** in Jacksonville, Florida, on November 24th, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

[9] For the same reasons, the Court dismisses without prejudice the claims against Lt. Doe, which allegedly arise from the July 10, 2024 incident. Alternatively, the Court dismisses these claims without prejudice for Plaintiff's failure to sufficiently identify Lt. Doe for service of process after multiple opportunities to do so. (*See* Docs. 25, 29, 32).

Jax-11
c:
Counsel of Record
Timmy Kinner, #F91538